ELEFTERAKIS, ELEFTERAKIS & PANEK
Nicholas Elefterakis, Esq.
80 Pine Street, 38th Floor
New York, New York 10005
P: (212) 532-1116
F: (212) 532-1176
nick@elefterakislaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

=============================================X

ZACHARY COLEMAN,

Plaintiff,

**COMPLAINT**

-against-

Civil Action No.:

SOUTHWEST AIRLINES COMPANY,
GE AVIATION, LLC, SAFRAN S.A. d/b/a SAFRAN
AIRCRAFT ENGINES, SAFRAN USA, INC., and
CFM INTERNATIONAL, INC.,

Defendants,

=============================================X

Plaintiff, ZACHARY COLEMAN, by and through his attorneys, ELEFTERAKIS,

ELEFTERAKIS & PANEK, and for his Complaint against the Defendants herein, respectfully shows

to this Court and alleges as follows:

## NATURE OF THE ACTION

1.      This action is brought to recover damages for the serious personal injuries sustained

by Plaintiff as a result of Defendants' negligence.

## PARTIES

2.      At all times herein mentioned, plaintiff, ZACHARY COLEMAN, was and still is

an adult resident of the State of New York.

3.      At all times herein mentioned, Defendant, SOUTHWEST AIRLINES COMPANY

was and is a foreign corporation duly organized and existing under the laws of the State of Texas.

4.     At all times herein mentioned, and upon information and belief, Defendant, SOUTHWEST AIRLINES COMPANY maintained a principal place of business at 2702 Love Field Drive, Dallas, TX 75235.

5.     At all times herein mentioned, and upon information and belief, Defendant, SOUTHWEST AIRLINES COMPANY, which was and is a foreign corporation, was duly authorized to do business in the State of New York and was transacting and/or conducting business in the State of New York.

6.     At all times herein mentioned, and upon information and belief, Defendant, SOUTHWEST AIRLINES COMPANY is registered to be served at Corporation Service Company, 80 State Street, Albany, New York 12207.

7.     At all times herein mentioned, Defendant, GE AVIATION, LLC was and is a foreign corporation duly organized and existing under the laws of the State of Delaware.

8.     At all times herein mentioned, and upon information and belief, Defendant, GE AVIATION, LLC maintained a principal place of business at One Neuman Way, Cincinnati, OH 45215.

9.     At all times herein mentioned, and upon information and belief, Defendant, GE AVIATION, LLC, does business individually, through a partnership, agency and/or joint venture as CFM International.

10.    Upon information and belief, at all times mentioned, herein, Defendant, GE AVIATION, LLC, was duly authorized to do business in the State of New York and was transacting and/or conducting business in the State of New York and/or has significant contacts with the State of New York.

11. At all times herein mentioned, and upon information and belief, Defendant, GE AVIATION, LLC is registered to be served at Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

12. At all times herein mentioned, Defendant, SAFRAN S.A. is a foreign corporation existing under the laws of the country of France, which does business through its division Safran Aircraft Engines.

13. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN S.A. maintained a principal place of business at 2 Boulevard Du General Martial-Valin, Paris, 75742, France.

14. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN S.A., does business individually, through a partnership, agency and/or joint venture as CFM International.

15. Upon information and belief, at all times mentioned, herein, Defendant, SAFRAN S.A., was duly authorized to do business in the State of New York and was transacting and/or conducting business in the State of New York and/or has significant contacts with the State of New York.

16. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN S.A. may be served pursuant to the Hague Convention and Fed. R. Civ. P. 4(h)(2) and 4(f).

17. At all times herein mentioned, Defendant, SAFRAN USA, INC. was and is a foreign corporation duly organized and existing under the laws of the State of Delaware.

18. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN USA, INC. maintained a principal place of business at 22091 West Royal Lane, Irving,

Dallas, County, Texas 75063.

19. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN USA, INC., does business individually, through a partnership, agency and/or joint venture as CFM International.

20. Upon information and belief, at all times mentioned, herein, Defendant, SAFRAN USA, INC., was duly authorized to do business in the State of New York and was transacting and/or conducting business in the State of New York and/or has significant contacts with the State of New York.

21. At all times herein mentioned, and upon information and belief, Defendant, SAFRAN USA, INC. is registered to be served at Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

22. At all times herein mentioned, Defendant, CFM INTERNATIONAL, INC. was and is a foreign corporation duly organized and existing under the laws of the State of Delaware.

23. At all times herein mentioned, and upon information and belief, Defendant, CFM INTERNATIONAL, INC. maintained a principal place of business at One Neuman Way, Cincinnati, OH 45215.

24. At all times herein mentioned, Defendant, CFM INTERNATIONAL, INC., does business individually, through a partnership, agency and/or joint venture as CFM International.

25. Upon information and belief, at all times mentioned, herein, Defendant, CFM INTERNATIONAL, INC., was duly authorized to do business in the State of New York, and was transacting and/or conducting business in the State of New York and/or has significant contacts with the State of New York

26.     At all times herein mentioned, and upon information and belief, Defendant, CFM INTERNATIONAL, INC. is registered to be served at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

27.     GE, Safran, Safran USA, and CFM are collectively referred to as "the CFM Defendants" when referencing the joint venture, agency, and/or partnership between these entities for the purpose of manufacturing, selling, supporting, and designing commercial aircraft engines.

## JURISDICTION AND VENUE

28.     Jurisdiction is conferred on this Honorable Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

29.     The amount in controversy exceeds $75,000.000 exclusive of costs and interest.

30.     Plaintiff is a resident of the State of New York, and the Defendants are all incorporated in a state other than New York, and have principal places of business in a state other than New York.

31.     The plaintiff further invokes the jurisdiction of the Court to adjudicate pendent state law claims pursuant to 28 U.S.C. § 1367.

32.     Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2).

## TRIAL BY JURY

33.     Plaintiff demands trial by jury.

## BACKGROUND OF THE CAUSE OF ACTION

34.     Upon information and belief, at all times mentioned herein and on or before April 17, 2018, Defendant, SOUTHWEST AIRLINES COMPANY (hereinafter "Southwest") is a commercial air carrier that operated regularly scheduled passenger flights, performed and/or

caused to be performed aircraft maintenance at New York-LaGuardia Airport, and owes the highest duty of care to its passengers to ensure safe carriage aboard those flights that it operates.

35.    Upon information and belief, at all times mentioned herein and on or before April 17, 2018, Defendants GE AVIATION, LLC, Safran, S.A., Safran USA, INC. and CFM INTERNATIONAL INC. (hereinafter "CFM Defendants"), doing business as CFM International, manufactured, designed, and sold the CFM56-7B engines that are installed in certain Boeing 737-700 commercial aircrafts.

36.    Upon information and belief, at all times mentioned herein and on or before April 17, 2018, the CFM Defendants, sold, leased, distributed and/or otherwise provided the aforementioned engines to Defendant, Southwest.

37.    Upon information and belief, at all times mentioned herein Defendant, Southwest, its employees, agents and/or those for whom Southwest is legally responsible, owned, leased, operated, serviced, maintained, and repaired the aforementioned aircraft and all of its component parts and systems, including, but not limited to the airframe, structural components and members, vertical and horizontal stabilizers, rudder and banking mechanisms, fuselage, engines and their components, composite material, tail fin section, vertical tail fin mounting assemblies (including tongues attached to the tail fin section that fit into grooves on the fuselage), hydraulics, communications, navigation, fuel systems, thrust reversers, flight control systems, and every other electronic, mechanical and/or other systems, components and equipment of the aforementioned aircraft.

38.    Upon information and belief, Defendants, its employees, agents, servants and/or others for whom Defendant, Southwest, is legally responsible, wrote and/or approved instructions and warnings for the aforementioned aircraft and its component parts and systems, including, but

not limited to its flight manual, maintenance manual, maintenance instructions and service bulletins.

39.     Upon information and belief, at all times mentioned herein, it is of the utmost importance that commercial air carriers as well as the manufacturers of commercial aircraft engines adhere to the highest standards of care to ensure that passengers are not subjected to any dangers which could induce an in-flight emergency.

40.     Upon information and belief, at all times mentioned herein, members of the public who engage in commercial air travel place the ultimate trust, and do in fact entrust their lives and safety, to entities such as Southwest and the CFM Defendants and rely upon their good will, representations of dedications to safety, and apparent expertise over the airworthiness of their products and propriety of their services.

41.     Upon information and belief, at all times mentioned herein, these Defendants, breached that trust as they each were aware of a dangerous condition existing in the CFM56-7B engines which power the Boeing 737-700 aircraft that Southwest operates in its fleet of commercial aircrafts.

42.     Upon information and belief, at all times mentioned herein, this knowledge, either in whole or in part, along with additional reasons to be developed in discovery, arises from the in-flight uncontained engine failure that happened to a Southwest Airlines Boeing 737-700 scheduled as Southwest Flight 3472 on August 27, 2016 when one of the CFM56-7B engine fan blades failed, destroyed the engine compartment, and caused engine debris to strike and damage the aircraft fuselage.

43.     Upon information and belief, at all times mentioned herein, the uncontained engine failure that happened to Flight 3472 was precipitated by a fatigue failure of the fan blade of the

CFM56-7B engine.

44. Upon information and belief, at all times mentioned herein, subsequent to Flight 3472, Southwest and the CFM Defendants failed to take reasonable measures and failed to identify and correct the root cause of the metal fatigue failure of the fan blade and the uncontained nature of the failure to ensure that a future uncontained fan blade failure would not occur despite being on clear notice that such a failure could, and did, result in a projectile striking the aircraft fuselage.

45. Upon information and belief, at all times mentioned herein, the CFM Defendants recommended inspections of the fan blades based on hours in service, however, Southwest did not follow, adhere, accelerate, nor properly perform these inspections on the Boeing 737-700 aircraft in its fleet, including the subject aircraft.

46. Upon information and belief, at all times mentioned herein, the fan blade inspections, however, are not the cure to the root cause of the problem, and rather mask a dangerous metallurgical, structural, casting, forging, or metallic treatment-based design or manufacturing flaw, or other design or manufacturing defect rendering the fan blades incapable of withstanding the vibratory and/or thermal stresses encountered in normal operational service.

47. Upon information and belief, at all times mentioned herein, despite this threat to the safety of Southwest's fleet of 737-700 aircraft, despite the lack of investigation into the root cause of Flight 3472's fan blade failure, these Defendants provided no warnings to the flying public, provided no warnings to its actual customers, and in particular, provided no warnings to Plaintiff, ZACHARY COLEMAN.

48. Upon information and belief, at all times mentioned herein, instead of providing necessary warnings or otherwise removing dangerous engines from service, Southwest continued to operate commercial air carrier services despite knowing that its Boeing 737-300 aircraft,

including the subject aircraft, were operating with an unresolved and undisclosed, unsafe condition.

49.   On April 17, 2018, Mr. Coleman was a fare-paying passenger aboard Southwest Airlines Flight 1380 which was a scheduled flight originating at New York-LaGuardia Airport.

50.   New York-LaGuardia Airport is located in the County of Queens, State of New York.

51.   Upon information and belief, on April 17, 2018, at approximately 10:30 a.m., the Southwest Airlines Flight 1380 departed from New York-LaGuardia Airport.

52.   Mr. Coleman relied on the representations, warranties of the Defendants, and entrusted his safety to Southwest and the CFM Defendants as he was completely unaware of the dangerous condition plaguing the aircraft's engines; a risk that he would never have accepted had it been disclosed to him.

53.   Approximately 20 minutes after Flight 1380 departed and was flying in the airspace over the Commonwealth of Pennsylvania, the left CFM56-7B engine suffered a catastrophic, uncontained failure of a fan blade causing unexpected and sudden pitch and/or bank movements of the aircraft, and a resulting controlled rapid emergency descent.

54.   Debris from the uncontained engine failure struck the aircraft's fuselage and shattered a passenger's window causing rapid depressurization.

55.   Mr. Coleman was sitting approximately eight rows behind the location of the shattered window.

56.   Mr. Coleman witnessed the horror as the force of the depressurization pulled an innocent passenger partially through the shattered window and he watched as passengers risked their lives to pull the passenger back into the aircraft and save her life.

57. The engine failure and breach of the window caused severe vibrations and the cabin environment to become a whirlwind of airflow and airborne debris which struck Mr. Coleman and obstructed his breathing.

58. This environment exacerbated Mr. Coleman's panic and horror and in the midst of the violent conditions within the cabin; he prayed and feared for his life, he heard other passengers using their cell phones to reach out to loved ones to say their final goodbyes, and he thought he was going to die.

59. Flight 1380 was diverted to Philadelphia International Airport where it landed and passengers disembarked only to be encountered by a team of people actually or ostensibly working on behalf of Southwest whose questions and treatment of passengers revealed a failure to account for the shock that these innocent victims, including Mr. Coleman, were experiencing.

60. The individuals actually, or ostensibly, working on behalf of Southwest, failed to use the appropriate care of Mr. Coleman and exacerbated the traumatic stress he experienced.

61. Photographs taken of the failed left engine and published by news reports reveal a missing fan blade with reports that the fracture surfaces showed signs of metal fatigue.

62. Plaintiff's investigation thus far supports a finding that the blade failure which occurred on Southwest Flight 1380 was identical and/or substantially similar to the fan blade failure which occurred on Southwest Flight 3472.

63. As a direct and proximate cause of the traumatic events that occurred on Flight 1380, Plaintiff, ZACHARY COLEMAN suffered and continues to suffer, severe personal injuries including but not limited to post-traumatic stress disorder, anxiety, emotional distress, depression, personal injuries to his body including the physical manifestations of the emotional and mental trauma he experienced and continues to suffer, and seeks recovery for all damages including but

not limited to, damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright. Plaintiff further seeks all other available compensatory damages, as well as punitive damages against the Defendants and each of them for their reckless misconduct and conscious disregard for his safety, health, life and wellbeing.

<u>AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION</u>

64.    Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "63" of this complaint with the same force and effect as if fully set forth herein.

65.    As a common carrier and/or commercial airline carrier, Southwest owed a duty of care to its passengers, including Mr. Coleman, to ensure that the aircraft and engines that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers, and owed duties to perform any necessary repair, inspection and maintenance that it assumed in a professional and reasonably prudent manner in the context of the circumstances presented.

66.    As an air carrier, Southwest also owed regulatory duties to ensure that the aircraft that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, and owed a duty to discontinue services and/or warn its passengers of any dangers associated with its

aircraft so that they make informed judgments about purchasing services from Southwest or other carriers; the breaches of such regulatory duties constitute negligence per se.

67. Defendant Southwest breached the foregoing duties of care owed to Plaintiff, ZACHARY COLEMAN as follows:

a. Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

b. Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

c. Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

d. Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

e. Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

f. Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

g. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

h. Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to

ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.  Failing to take appropriate and reasonable corrective measures after the in-flight emergency that occurred on Flight 3472 to ensure that similar uncontained engine failures would not occur;

j.  Failing to take appropriate and reasonable measures to ensure that the aircraft engines used in its fleet, including the subject CFM56-7B, were free of design and/or manufacturing defects rendering it unsafe for flight;

k.  Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

l.  Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

m. Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not been remedied, and whose root cause had not been addressed, to prevent further catastrophe;

n.  Failing to warn Plaintiff that the subject aircraft and its engine contained an unsafe condition and/or design or manufacturing defects that had not been rectified after a prior malfunction approximately a year before;

o.  Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

p.  Failing to properly train its team of employees and/or agents responsible to contend with passengers who were in shock after experiencing an in-flight emergency and exacerbating Plaintiff's trauma and shock;

q.  Failing to act reasonably by exacerbating Plaintiff's post-traumatic stress;

r.  Failing to act reasonably for reasons to be developed in discovery of this action.

68.  As a direct and proximate cause of the foregoing breaches by Defendant, Southwest of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

69.  WHEREFORE, Plaintiff demands judgment against the Defendant, Southwest, in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

<u>AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION</u>

70.  Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "69" of this complaint with the same force and effect as if fully set forth herein.

71.  Defendant, Southwest, is a commercial air carrier and offers its services to the public for a profit. This Defendant holds itself out to the public as a company that has a commitment to safety and has adopted the highest safety standards to ensure its passengers' safety.

72.  Plaintiff contracted with Defendant, Southwest, as a fare paying passenger for safe carriage and transport from his origination to his destination.

73.  Included within that contract was Southwest's obligation to provide an aircraft that

was in a safe condition for flight.

74.    Plaintiff relied upon the representations, good will, warranties, and contractual obligations that Southwest promised it would perform.

75.    Defendant, Southwest, breached its contractual obligations and warranties in the following respects:

      a.  Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

      b.  Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

      c.  Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

      d.  Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

      e.  Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

      f.  Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

      g.  Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

      h.  Failing to follow the recommended/mandatory inspection procedures designed

to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.  Failing to take appropriate and reasonable corrective measures after the in-flight emergency that occurred on Flight 3472 to ensure that such events did not repeat themselves;

j.  Failing to take appropriate and reasonable measures to ensure that the aircraft it used in its fleet, including the subject Boeing 737-700, were free of design and/or manufacturing defects rendering it unsafe for flight;

k.  Failing to comply with and accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

l.  Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

m. Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not been remedied, whose root cause had not been addressed, to prevent further potential catastrophe;

n.  Failing to warn Plaintiff that the subject aircraft and its engine contained serious design defects that had not been rectified after a prior malfunction approximately a year before;

o.  Failing to fulfill regulatory duties to report product defects, service problems,

or other matters that affect the safety of flight to regulatory authorities;

    p.  Failing to act reasonably for reasons to be developed in discovery of this action.

76.    As a direct and proximate cause of the foregoing breaches by Defendant, Southwest, of duties it owed to Plaintiff, and his reasonable reliance thereon, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

77.    WHEREFORE, Plaintiff demands judgment against the Defendant in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION

78.    Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "77" of this complaint with the same force and effect as if fully set forth herein.

79.    Those defendants collectively referred to as the CFM Defendants are the manufacturer, seller, and designer of commercial aircraft engines including the subject CFM56-7B. These Defendants collectively hold themselves, and their joint venture, out to the public as a company that a has a commitment to safety and has adopted the highest safety standards to ensure the safety of the users of its products. As such, these Defendants owed Plaintiff duties of care to ensure that its products were not dangerous, unsafe, unairworthy, or defective and, to warn of any dangers that would affect the safety of flights and put users of its products in danger.

80.    In addition to duties imposed by common law, the CFM Defendants are subject to regulatory duties, the breaches of which constitute negligence per se.

81.  The CFM Defendants breached its duties owed to Plaintiff as follows:

   a. Failing to properly test, design, construct, build, or specify the engine assemblies to ensure that they possess all of the necessary features to be capable of containing an internal engine malfunction such as the one experienced on Flight 1380;

   b. Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the subject engine assembly to contain a failure of the internal components of the subject engine;

   c. Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

   d. Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

   e. Failing to warn users of its product that the engine assembly suffered from design and/or manufacturing defects rendering it unsafe for flight because it was incapable of containing an internal engine malfunction such as the one experienced on Flight 1380;

   f. Failing to properly test, design, construct, build, or specify test the internal engine components of its aircraft's engines to ensure that they are capable of withstanding the stresses imparted to them to prevent a premature failure;

   g. Failing to properly perform the necessary analysis evaluation, failure modes

and effects analysis, or other accepted engineering study to assess the safety of the internal engine components used in the CFM56-7B engine such as its fan blades;

h. Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

i. Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

j. Failing to warn users of its product that the CFM56-7B internal engine components such as its fan blades suffered from design and/or manufacturing defects rendering them unsafe for flight because they were incapable of withstanding the stresses encountered under normal engine operating conditions;

k. Failing to properly audit, monitor, evaluate, and ensure that vendors who manufacture, forge, and/or sell, component parts installed in its aircraft, such as the internal components of the CFM56-7B engine which malfunctioned during Flight 1380, to ensure that the products they produce are safe, airworthy, met specifications, and did not contain any features that would cause an engine malfunction;

l. Failing to properly make the necessary design changes and or decisions to discontinue or postpone service of those engines which potentially and/or in fact did possess inherent design defects in their engines;

m. Failing to provide the warnings necessary to make the subject engines safe for use in commercial aircraft operation;

n. Failing to act reasonably, prudently, and/or in accordance with the standard of care in connection with the support, design, sale, and/or manufacture of the subject engine;

o. Failing to act reasonably, prudently, and/or in accordance with the standard of care for reasons to be developed in discovery of this action.

82.     As a direct and proximate cause of the foregoing breaches by the CFM Defendants of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

83.     WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

### AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION

84.     Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "83" of this complaint with the same force and effect as if fully set forth herein.

85.     The CFM Defendants are a manufacturer, seller, and designer, and/or through partnership, joint venture, agency or otherwise, are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

86.     The CFM Defendants did manufacture, sell, and design the subject aircraft.

87. The subject CFM56-7B engine was defectively designed in the following respects:

    a. The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

    b. Engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

    c. The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

    d. The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

    e. The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

    f. The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

    g. The engine was defectively designed because they lacked all necessary

warnings to make them safe for use in commercial aircraft operation;

h. The engine was defectively designed because it contained unsafe conditions and features rendering it dangerous, susceptible to uncontained failure, susceptible to fatigue fractures of the fan blades all of which were reasonably likely to occur between inspection schedules;

i. The engine was defectively designed for reasons that will be developed in the discovery of this matter.

88. The risks associated with the foregoing defects were so severe that they could cause certain death in a commercial airline disaster that they outweighed any benefit to cost, production, ease of manufacture, or otherwise.

89. The nature of the design and/or manufacturing defects were so profound that no ordinary user of the product would accept them.

90. As a direct and proximate cause of the foregoing design defects, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

91. WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION

92. Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "91" of this complaint with the same force and effect as if fully set forth herein.

93.     The CFM Defendants are a manufacturer, seller, and designer, and/or through partnership, joint venture, agency or otherwise, are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

94.     These Defendants did manufacture, sell, and design the subject aircraft.

95.     The CFM Defendants warranted expressly and/or impliedly that the aircraft engines were free of material defects, that they were merchantable and fit for the particular purpose intended, that they were airworthy, that were safe for flight, and fit for use in commercial aircraft, and that these warranties ran to Plaintiff as an intended and/or third-party beneficiary.

96.     The CFM Defendants described and advertised its products including the subject model engine. Such descriptions and advertisements included, but were not limited to advertising brochures, instructions, manuals, specification sheets, web-based information and other products, statements and representations. These descriptions, representations and affirmations concerning the goods and services of Defendant resulted in express warranties that the goods were as described and sold for their intended use.

97.     These descriptions, representations, affirmations and express warranties became part of the basis of the bargain of their sale and these warranties ran to Plaintiff upon which Plaintiffs relied.

98.     Plaintiff was a member of the class to whom the warranties were intended to protect.

99.     The CFM Defendants breached the express and implied warranties because:

   a.   The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the

compartment;

b. The engine assembly failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

c. The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

d. The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

e. The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

f. The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

g. The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

h. The engine was defectively designed for reasons that will be developed in the discovery of this matter.

100. As a direct and proximate cause of the foregoing breaches, the subject CFM56-7b

engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

101. WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## AS AND FOR PLAINTIFF'S SIXTH CAUSE OF ACTION

102. Plaintiff, ZACHARY COLEMAN, repeats and realleges each and every allegation in paragraphs numbered "1" through "101" of this complaint with the same force and effect as if fully set forth herein.

103. The conduct giving rise to the breaches of duties owed by Southwest and the CFM Defendants described above, are especially egregious and aggravated because the Defendants had knowledge that the subject aircraft engine had a dangerous design defect.

104. This knowledge is detailed in paragraphs 34 through 48 above. These facts show that the Defendants, collectively and or individually, had actual knowledge of an unsafe condition in the engine that had not been remedied since the last known failure only a year before Flight 1380.

105. Despite knowing of the dangerous condition of the subject aircraft's engine, the Defendants risked the lives of more than a hundred innocent passengers, including Plaintiff, by electing not to discontinue service with the use of aircraft equipped with these engines or otherwise electing not to inform passengers of the nature of the existing dangerous condition.

106. The Defendants knew that the evaluation of the failed engine components of Flight 3472 was moving at a slow pace and that, even though more than a year had passed, a root cause

of the failure had not been corrected.

107.   Rather than protect the safety of Plaintiff and those who also were fare paying customers, the Defendants' misconduct placed profits and business over the safety of its customers and continued to operate these engines even though there was confirmation that an unsafe condition existed which had not been corrected since the failure that befell the 2016 incident involving Flight 3472.

108.   Given the gravity of harm that could come upon passengers in a commercial aircraft which would be a certain catastrophe, such as what occurred on Flight 1380 on April 17, 2018, these Defendants acted with malice, recklessness, and with disregard for the rights of others including Plaintiff.

109.   As a direct and proximate cause of the foregoing misconduct, the subject CFM56-7b engine experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

110.   WHEREFORE, Plaintiff demands judgment against the Defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

Dated: New York, New York
     July 31, 2018

ELEFTERAKIS, ELEFTERAKIS & PANEK

By:_____
    Nicholas Elefterakis, Esq.
    Attorneys for Plaintiff
    80 Pine Street, 38th Floor
    New York, New York 10005
    T. (212)532-1116
    F. (212)532-1176
    nick@elefterakislaw.com